### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO

The Noco Company, Inc.,

Case No.  1:18cv2780

Plaintiff,

-vs-

JUDGE PAMELA A. BARKER

SmarTech Products, Inc., et al.,

Defendants

MEMORANDUM OPINION AND ORDER

Currently pending is Plaintiff The Noco Company, Inc.'s Motion for Leave to Amend the Complaint and Final Infringement Contentions.  (Doc. No. 63.)  Defendants SmarTech Products, Inc. and SmarTech, Inc. did not file a response.  For the following reasons, Plaintiff's Motion is DENIED.

I.     Relevant Background

A.     The Pleadings

On November 30, 2018, Plaintiff The Noco Company, Inc. (hereinafter "Plaintiff" or "Noco") filed a Complaint against Defendant SmarTech Products, Inc. alleging various claims under federal and state law for trade dress and trademark infringement and dilution, unfair competition, and deceptive trade practices.  (Doc. No. 1.)

Several months later, on March 4, 2019, Noco filed an Amended Complaint against Defendants SmarTech Products, Inc. and SmarTech, Inc. (hereinafter referred to  collectively as "SmarTech" or "Defendants") and The Home Depot, Inc., alleging the following: (1) trade dress infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) (Counts One and Two); (2) trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) (Counts Three and Four); (3) deceptive trade practices under Ohio Rev. Code

§§ 4165.01 – 4165.04 (Count Five); and (4) Patent Infringement of U.S. Patent No. 9,007,015 ("the '015 Patent") under 35 U.S.C. § 271 (Count Six).  (Doc. No. 7.)

Relevant to Noco's patent infringement claim, the Amended Complaint alleges the following.[1] Noco is an Ohio corporation that designs and manufactures (among other products) premium consumer battery chargers, jump starters, and other portable power devices used primarily in the automotive and marine industries.  (*Id.* at ¶¶ 1, 9.)  SmarTech[2] is a Virginia corporation that manufactures, imports, sells and/or offers for sale certain products that allegedly infringe on the '015 Patent.  (*Id.* at ¶ 2.)

Historically, the prevalent method to recharge a dead car battery has been through the use of "jumper cables," where two cables are run from a live battery in a running vehicle to a dead battery of a second vehicle.  (*Id.* at ¶ 24.)  Noco alleges that there are "many problems associated with jumper cables," including the fact that a second car with a live battery is needed to perform a jump start, and the danger of sparking and short circuits, especially when the cables from the live battery to the dead battery are misconnected (referred to as "reverse polarity") or not fully connected.  (*Id.*)  "The advent of lithium-ion batteries has permitted the introduction of compact jump starters that do not require the use of a second vehicle, providing consumer convenience as well as certain safety advantages over prior jump starting devices."  (*Id.* at ¶ 26.)

---

[1] As they are not directly relevant to the instant Motion, the Court will not recite Noco's factual allegations relating to its trade dress, trademark infringement and unfair competition claims.  The Court notes only that Noco's Lanham Act and Ohio Deceptive Trades Practices Act claims relate to Defendants' IC-750 smarter™ battery maintainer product.  *See* Doc. No. 7 at ¶¶ 2, 7, 16, 21, 22.

[2] Plaintiff alleges that: "The defendant identified in the Complaint as 'Smartech Products, Inc.' is, on information and belief, a fictitious entity and an unregistered alias of defendant Smartech. The packaging of each of the accused products and infringing models references 'Smartech Products, Inc.' of Virginia, and Smartech's website also references 'Smartech Products, Inc.'  However, the Commonwealth of Virginia does not list any such entity or name in its publicly available, online records. As used herein, 'Smartech' means defendants Smartech and Smartech Products." (*Id.* at ¶ 3.)

2

In 2014, Noco introduced the Genius Boost® lithium jump starter, which incorporates certain patented safety features.[3]  (*Id.* at ¶ 27.)  Noco alleges that, "[s]ince its introduction, the Genius Boost® has become known for its safety, ease of use, and reliability, among other features."  (*Id.* at ¶ 29.) "As a result, the Genius Boost® has enjoyed tremendous popularity, becoming one of, if not the, market-leading compact lithium jump starters in the United States." (*Id.*)

On July 3, 2014, Noco filed a utility patent application covering the Genius Boost®, which was granted and issued on April 14, 2015 as the '015 Patent.  (*Id.* at ¶ 30.)  A copy of the '015 Patent is attached to the Amended Complaint as Exhibit 4.  (Doc. No. 7-4.)  The '015 Patent "discloses and claims a handheld device for jump starting a vehicle engine that includes a lithium ion battery and a microcontroller (computer) as well as sensors to detect whether (1) the device is connected to both terminals of a vehicle battery, and (2) whether the connection is the proper polarity—i.e., whether or not the positive charging clamp is connected to the positive battery terminal and the negative charging clamp is connected to the negative terminal."  (*Id.* at ¶ 31.)  According to Noco, "[t]]he microcontroller is configured (i.e., programmed) to instruct the charger to provide power to the charging clamps only when the sensors provide signals that the charger is fully connected to the battery, and that the connection is in the correct polarity."[4]  (*Id.*)

---

[3] Noco manufactures and sells several models of the Genius Boost®, which vary based on, among other things, characteristics of the vehicles to be jump started and consumer preferences.  (*Id.* at ¶ 28.)

[4] As explained in the specification to the '015 Patent, one of the purposes of the invention was to address problems with previous art which displayed certain safety issues; i.e., "when either the jumper terminals or clamps of the cables were inadvertently brought into contact with each other while the other ends were connected to a charged battery, or when the positive and negative terminals were connected to the opposite polarity terminals in the vehicle to be jumped, thereby causing a short circuit resulting in sparking and potential damage to batteries and/or bodily injury."  *See* '015 Patent at Col. 1, lns 16-23 (Doc. No. 7-4 at PageID# 95.)  The instant invention is designed to address these safety issues by disclosing a design whereby the microcontroller is programmed to instruct the charger to provide power to the charging clamps only when sensors indicate that they are properly connected.

3

The Amended Complaint then recites claim 1 of the '015 Patent, verbatim.  (*Id*. at ¶ 32.)  Noco alleges that "Defendants infringe the '015 Patent in violation of 35 U.S.C. § 271 by making, using, selling, offering to sell and/or importing at least the following models of compact lithium jump starters sold under the brand name Smartech that have safety features claimed in the '015 patent: [1] the JS-15000 smarter™ Portable 15000mAh Lithium Powered Vehicle Jump Starter/Power Bank, [2] JS-10000 smarter™ Portable 10000mAh Lithium Vehicle Jump Starter/Power Bank, and [3] the JS-8000 smarter™ Portable 8000mAh Lithium Vehicle Jump Starter/Power Bank (collectively, the 'Infringing Models')."  (*Id*. at ¶ 33.)

Noco alleges that "each of the Infringing Models meet each element of at least claim 1 of the '015 Patent."  (*Id*. at ¶ 34.)  The Amended Complaint then sets forth specific allegations regarding the Infringing Models that track the elements of that claim.  (*Id*.)  Specifically, Noco alleges that each of the Infringing Models have (1) a lithium battery pack that acts as an internal power supply; (2) positive and negative polarity outputs on an output connector; (3) an optocoupler sensor that senses the presence of a vehicle battery; (4) a sensor that outputs a signal indicating whether a battery is connected in proper polarity; (5) a transistor that controls the device's power switch; and (6) a microcontroller that receives signals from the above-described sensors and processes them such that the device is not turned on when the sensors indicate that a battery is not connected to both outputs, or that the connection is in a reverse polarity state.  (*Id*.)

Based on the above allegations, Noco alleges, in Count Six of the Amended Complaint, a claim for infringement of the '015 Patent, in violation of 35 U.S.C. § 271(a).  (*Id*. at ¶¶ 65-70.)

On March 6, 2019, then-assigned District Judge Patricia Gaughan conducted a Case Management Conference, at which various patent case management deadlines were set.  (Doc. No.

4

12.)  Among other things, the Court set the following deadlines: (1) initial infringement contentions due by April 9, 2019 and initial non-infringement contentions due by May 2, 2019; (2) invalidity contentions due by June 13, 2019 and validity contentions due by July 3, 2019; (3) final list of claim terms for construction due by July 18, 2019; (4) opening Claim Construction Briefs due by October 3, 2019; and (5) responsive Claim Construction Briefs due by October 31, 2019.  (*Id.*)

On March 18, 2019, SmarTech filed an Answer, Affirmative Defenses, and Counterclaims. (Doc. No. 16.)  In its Counterclaims, SmarTech asserted the following causes of action: (1) declaratory judgments of non-infringement of trade dress and trademark; (2) declaratory judgment of invalidity of Noco's trademark registration, Reg. No. 4,762,738 ("the '738 Registration"); (3) cancellation of the '738 Registration; (4) declaratory judgments of non-infringement and invalidity of '015 Patent; and (5) unfair competition under the Lanham Act.  (*Id.*)

Relevant to SmarTech's declaratory judgment patent counterclaims, SmarTech alleges that "prior to 2014, car battery jump starters utilizing the technology set forth in [the] '015 Patent were widely used and sold by other third parties."  (*Id.* at PageID# 138, ¶ 9.)  SmarTech alleges that it "has not and does not infringe any valid, enforceable claim of the '015 [P]atent literally, directly, jointly contributorily, by way of inducement and/or the doctrine of equivalents."  (*Id.* at ¶ 13.)  It further alleges that: "All claims set forth in the '015 patent are invalid for failure to comply with the conditions for patentability set forth in 35 U.S.C. §§ 102, 103 and/or 112.  For example, and without limitation, the claims of the '015 Patent are invalid under 35 U.S.C. § 102 and 103 because of prior use by third parties, prior art previously identified by sued third parties and additional prior art that may be disclosed or identified during discovery in this case." (*Id.* at ¶ 16.)

5

On June 26, 2019, this matter was transferred to the undersigned pursuant to General Order 2019-013.[5]

**B.    Initial Infringement and Invalidity Contentions, Markman Briefs, Markman Decision, and Final Infringement Contentions**

Noco served its Initial Infringement Contentions in April 2019, alleging that SmarTech's Infringing Models (i.e., its JS-series jump starters) infringed claims 1-3, 8-10, 12, 13, 15, 17 and 19 of the '015 Patent.  *See* Doc. No. 49 at p. 1.  SmarTech responded with its Initial Non-Infringement Contentions in May 2019 and Invalidity Contentions in June 2019.  On July 9, 2019, Noco filed a Motion to Strike Defendants' Invalidity Contentions on the grounds that Defendants failed to comply with the requirements of Local Patent Rule 3.5(c).  (Doc. No. 23.)  On July 31, 2019, the Court conducted a status conference with counsel and allowed SmarTech to serve amended invalidity contentions by August 7, 2019.  (*Id.*)  Noco then filed a Renewed Motion to Strike, in part, SmarTech's Amended Invalidity Contentions.  (Doc. No. 28.)  SmarTech filed a Brief in Opposition, to which Noco replied.  (Doc. Nos. 29, 30.)

The parties thereafter filed their Claims Construction Briefs on October 3, 2019.  (Doc. Nos. 31, 32.)  Responses were filed on October 31, 2019.  (Doc. Nos. 34, 35.)  On November 5, 2019, the parties filed their Joint Claim Construction and Prehearing Statement.  (Doc. No. 36.)

At no point in the Initial Infringement Contentions, Amended Invalidity Contentions, Claims Construction briefing, or Joint Claim Construction and Prehearing Statement did either party make

---

[5] Defendant The Home Depot, Inc. filed an Answer on April 5, 2019.  (Doc. No. 17.)  Later that same month, on April 29, 2019, the Court entered a Stipulation & Order dismissing The Home Depot, Inc., without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  (Doc. No. 22.)

6

any mention of (or raise any allegation of infringement of) claim 11 of the '015 Patent.  *See* Doc. Nos. 28-1, 31, 32, 36.

On April 16, 2020, this Court issued a Memorandum Opinion & Order (1) denying Noco's Motion to Strike SmarTech's Amended Invalidity Contentions and (2) construing certain disputed terms in Claims 1, 9, and 19 of the '015 Patent.  (Doc. No. 37.)

On May 27, 2020, the Court conducted a status conference in which it set various patent case management deadlines, including the following: (1)  Final Infringement Contentions due by July 12, 2020 and Final Non-Infringement Contentions due by August 11, 2020; (2)  Final Validity Contentions due by September 10, 2020; (3) Fact Discovery due by October 9, 2020; (4) Initial Expert Witness Disclosures due by October 30, 2020 and Rebuttal Expert Witness Disclosures due by November 30, 2020; (5) Expert Witness Deposition Cutoff of January 8, 2021;and (6) Dispositive Motions due by February 2, 2021. (Doc. No. 40.)

On July 10, 2020, Noco served its Final Infringement Contentions, in which it specifically accused SmarTech's JS-6000, JS-8000, JS-8000N, JS-10000, JS-15000, JS-15000N, and TECH-5000P jump starters of infringing claims 1-3, 8-10, 12, 13, 15, 17, and 19 of the '015 Patent. (Doc. No. 63-1 at PageID# 783.)  Noco's Final Infringement Contentions did not allege that any of SmarTech's products infringed claim 11 of the '015 Patent.

On September 30, 2020, upon motion of the parties, the Court extended the fact discovery, expert discovery, and dispositive motions deadlines by five (5) weeks.  (Doc. No. 44.)  Several months later, SmarTech indicated that it intended to obtain new counsel and moved to extend the above deadlines by an additional four weeks.  (Doc. No. 46.)  On November 12, 2020, the Court granted SmarTech's Motion and extended the deadlines as follows: (1) fact discovery due by

December 11, 2020; (2) initial expert disclosures due by January 4, 2021; (3) rebuttal expert disclosures due by February 1, 2021; (4) expert depositions due by March 12, 2021; and (5) dispositive motions due by April 6, 2021.

**C.      Stay of Proceedings pending IPR Review and Appeal to the Federal Circuit**

On December 8, 2020 (three days before the close of fact discovery), SmarTech filed an unopposed Motion to Stay the proceedings until the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO") concluded its newly-instituted *Inter Partes* Review ("IPR") of the validity of the claims of the '015 Patent.  (Doc. No. 48.)

SmarTech explained that, in May 2020, a non-party company (Shenzhen Carku Technology Co., Ltd or "Carku") filed a petition with the PTAB requesting *inter partes* review of the validity of every claim of the '015 Patent.  (*Id*. at p. 2.)  On November 12, 2020, the PTAB granted Carku's petition and instituted the IPR.  *See Shenzhen Carku Technology Co., Ltd. v. The NOCO Company*, *Inc.*, IPR2020-00944 (PTAB) (Paper 20).  SmarTech noted that "Carku's petition challenge[s] the validity of all twenty-three (23) claims of the '015 patent."  (*Id*. at p. 3.)  SmarTech further represented that "[t]he PTAB instituted its review against all claims, while specifically noting that "the merits of the alleged grounds of unpatentability based at least in part on Klang [challenges to claims 1, 4-5, 17, and 21-23] are strong."  *Id*.

SmarTech asked this Court to stay the instant proceedings pending the outcome of  IPR review, arguing as follows:

> [T]he totality of the circumstances strongly supports the requested stay. The proceedings in this case are still early enough that **a stay will save the Court and the parties significant expenses**. The newly-instituted IPR will review challenges to the validity of each asserted claim of the '015 patent, and the PTAB will issue its final decision in November 2021. **That IPR decision, whatever the outcome, will**

> **simplify the issues and trial in this case.** Finally, the requested stay would not prejudice NOCO, which does not oppose it.

(*Id*. at pp. 1-2) (emphasis added.) *See also id.* at pp. 5, 6 (repeating the argument that granting a stay would "save the Court and the parties significant expenses" because "the IPR results will simplify the issues and trial of the case.")

Based on the representations in SmarTech's unopposed Motion, the Court granted the Motion and stayed the case on December 8, 2020. The Court directed SmarTech to notify the Court within ten (10) days of the issuance of a decision by the PTAB. *See* Non-Doc Order dated Dec. 8, 2020.

SmarTech did not promptly notify this Court regarding the issuance of the PTAB decision. Rather, on November 12, 2021, this Court was made aware in a separate action currently pending before it that, on November 3, 2021, the PTAB had issued a final written decision on IPR in which it found that claims 1-10 and 12-23 of Noco's '015 Patent were unpatentable. *See Noco v. Shenzhen Gooloo*, Case No. 1:20cv1171 (Doc. No. 17.) The Court ordered SmarTech to provide the Court with a copy of the PTAB's decision and, further, directed the parties to submit a status report addressing the impact of the PTAB decision on the instant litigation and whether the stay should be lifted. *See* Non-Doc Order dated Dec. 7, 2021.

On December 17, 2021, the parties filed a Notice of IPR Decision, in which they confirmed that the PTAB had found claims 1-10 and 12-23 of the '015 Patent to be unpatentable. (Doc. No. 49.) Noco indicated that it disputed the PTAB's findings and had filed a request for rehearing. The parties requested that the instant matter remain stayed while Noco pursued its appellate remedies. The Court extended the stay through and until a final decision on Noco's request for rehearing, and ordered Noco to file Status Reports with this Court every thirty (30) days. *See* Non-Doc Order dated Dec. 17, 2021.

On February 17, 2022, Noco advised the Court that its request for rehearing had been denied. (Doc. No. 52.) Noco indicated that it was "evaluating its options" but that it intended to file an appeal of the IPR decision to the United States Court of Appeals for the Federal Circuit. (*Id*.) The Court conducted a status conference with counsel on March 21, 2022, in which Noco represented that it planned to file an appeal to the Federal Circuit by no later than April 18, 2022. During the conference, counsel for the parties agreed that, if and when Noco filed its appeal, the instant case should be administratively closed pending a decision. *See* Minutes dated March 21, 2022.

On April 15, 2022, Noco filed a Status Report confirming that it had filed a Notice of Appeal of the IPR decision with the Federal Circuit Court of Appeals. (Doc. No. 54.) The Court then directed the Clerk to administratively close the case, subject to reopening upon timely motion once the Federal Circuit had issued its decision. The Court also ordered the parties to file a Status Report within ten (10) days of the Federal Circuit Court decision. *See* Non-Doc. Order dated April 15, 2022.

On February 12, 2024, the Federal Circuit issued an order under Fed. Cir. R. 36 affirming the PTAB's findings that claims 1-10 and 12-23 of the '015 Patent are unpatentable. (Doc. No. 59.) The parties filed a Joint Notice on the docket advising this Court of the Federal Circuit's decision on March 14, 2024. (*Id*.)

**D.     Lifting of Stay and Motion to Amend**

On March 14, 2024, the Court ordered the parties to file Status Reports "addressing the impact of the Federal Circuit decision on the instant litigation." *See* Non-Doc dated March 14, 2024.

Noco submitted its Status Report on March 21, 2024. (Doc. No. 60.) Therein, Noco indicated that, while the PTAB had founds claims 1-10 and 12-23 of the '015 Patent unpatentable, it "found claim 11 of the '015 was not proven unpatentable." (*Id*. at p. 1.) Noco stated that it "intends to seek

10

a voluntary dismissal of its patent infringement claims in the present action," but noted that its "remaining claims are not affected." (*Id.*) At no point in its Status Report did Noco indicate that it intended to seek (or was considering seeking) leave to amend to add additional or new patent claims in the instant action.

On March 22, 2024, the Court issued an Order directing Noco to file a Motion to Reopen the instant case. The Court also ordered the parties to file a Joint Status Report specifically identifying their remaining claims/counterclaims in the instant action. The parties were directed to "describe what, if any, discovery has already been conducted with respect to their respective remaining claims/counterclaims, as well as the nature and scope of any additional discovery they believe still needs to be conducted." Non-Doc Order dated March 22, 2024. Lastly, the Court ordered the parties to propose case management deadlines governing their remaining claims/counterclaims, as necessary. *Id*.

Noco filed a Motion to Lift Stay and Reopen Action on April 12, 2024. (Doc. No. 61.) On that same date, the parties filed a Joint Status Report. (Doc. No. 62.) Therein, the Court was advised (for the first time) that Noco intended to seek leave to drastically change and expand its patent claims in the instant action. (*Id*. at p. 3.) Specifically, the Joint Status Report provided as follows:

> NOCO has learned that Smartech introduced its GSK-6000, GSK-8000, and GSK-10000 jump starters during the intervening years since this action was stayed in December 2020. Specifically, Smartech added USB charging ports for receiving power to charge the jump starters' internal batteries in at least these products. Before the stay, Smartech's jump starters had conventional DC barrel charging inputs, not USB charging ports. In view of Smartech's new designs, NOCO intends to seek leave to amend its Complaint, and to seek leave to amend its Final Infringement Contentions, to assert NOCO's patent claims relating to USB charging port technology.

> After the First Amended Complaint, the USPTO issued three more related patents to NOCO relating to NOCO's USB charging port technology after this action was stayed

in December 2020: U.S. Patent Nos. 11,447,023 ("'023 patent"), issued September 20, 2022; 11,584,243 ("'243 patent"), issued February 21, 2023; and 11,667,203 ("'203 patent"), issued June 6, 2023. Because these newer patents issued while this action was stayed, NOCO intends to seek leave to amend its Complaint to assert these three related patents against Smartech's new designs.

With respect to the previously-asserted '015 patent, NOCO will move to voluntarily dismiss its allegations with respect to the claims that were found unpatentable during the IPR proceedings. Smartech has not decided whether it will oppose the motion and will decide after it has an opportunity to review the motion or at least meet and confer with NOCO's counsel on the proposed amendment.

Claim 11 of the '015 patent, however, was not found unpatentable. It recites subject matter relevant to Smartech's new designs, namely: "a USB charging port configured to provide charging power from an external power source to said internal power supply." NOCO intends to seek leave to amend its Final Infringement Contentions to assert claim 11 of the '015 patent against Smartech's new designs.

(*Id.*) In sum, Noco advised this Court that it now intended to assert claims that three different SmarTech products (which were not the subject of the First Amended Complaint) not only infringed the sole surviving claim 11 of the '015 Patent, but also infringed three additional Noco patents (i.e., the '023, '243, and '203 patents) which were also not the subject of the First Amended Complaint.

The Court reopened the case, lifted the stay, and directed Noco to file its Motion for Leave to Amend by no later than May 1, 2024. On that date, Noco filed an "Unopposed Motion for Leave to Amend the Complaint and Final Infringement Contentions." (Doc. No. 63.) Noco attached clean and red-lined copies of its Proposed Second Amended Complaint to the Motion as Exhibits. (Doc. No. 63-2.) A review of Noco's Proposed Second Amended Complaint reveals that it contains forty (40) new paragraphs containing factual allegations relating to SmarTech's GSK-6000, GSK-8000, and GSK-10000 jump starters' alleged infringement of Noco's '015, '023, '243, and '203 patents. (*Id.*) Noco also attaches, as an Exhibit to its Motion, its "Initial Infringement Contentions with respect

to Claim 11 of the '015 Patent."  (Doc. No. 63-3.)  For reasons that are not apparent to this Court, SmarTech did not oppose Noco's Motion.

On May 1, 2024, Noco filed a Notice of Partial Dismissal with prejudice of its infringement allegations with respect to its "previously asserted claims 1-3, 8-10, 12, 13, 15, 17 and 19" of the '015 Patent.  (Doc. No. 64.)  The Court entered an Order of Partial Dismissal as to the above infringement allegations that same day.  (Doc. No. 65.)

## II.    Factual Allegations and Claims in the Proposed Second Amended Complaint

The Court first notes that, in its proposed Second Amended Complaint, Noco continues to assert its trade dress infringement, trademark infringement, and unfair competition claims  under the Lanham Act (proposed Counts 1 through 4) as well as its Deceptive Trade Practices claim under Ohio law (Count 5.)   *See*  Proposed  Second  Amended  Complaint  (Doc.  No.  63-2)  at  ¶¶  75-104.) Importantly, Noco's Lanham Act and Ohio Deceptive Trade Practice claims in the proposed Second Amended Complaint are consistent in all respects with the First Amended Complaint, including the fact that they continue to relate to SmarTech's IC-750 smarter™ battery maintainer and *not* to any of the new SmarTech products that are the subject of Noco's new patent claims.  (*Id*. at ¶¶ 2, 15, 20-22.)

Regarding Noco's new patent claims, the proposed Second Amended Complaint contains the following new factual allegations.  At the outset, Noco deletes all reference in the Second Amended Complaint to the infringing products that were the subject of the First Amended Complaint, i.e., the (1) JS-15000 smarter™ Portable 15000mAh Lithium Powered Vehicle Jump Starter/Power Bank; (2) JS-10000 smarter™ Portable 10000mAh Lithium Vehicle Jump Starter/Power Bank, and (3) JS-8000 smarter™ Portable 8000mAh Lithium Vehicle Jump Starter/Power Bank.  Instead, Noco substitutes three new SmarTech products and identifies them as the "Infringing Models."  (*Id*. at ¶ 2.)  These

13

new Infringing Models are the (1) Smartech GSK-6000 6000mAh Lithium Powered 450A Vehicle Jump Starter and Power Bank; (2) Smartech GSK-8000 8000mAh Lithium Powered 650A Vehicle Jump Starter and Power Bank, and (3) Smartech GSK-10000 10000mAh Lithium Powered 800A Vehicle Jump Starter and Power Bank.  (*Id*.)

Noco then sets forth proposed amended allegations relating to the '015 Patent.  (*Id*. at ¶¶ 29-41.)  Noco recites claim 1 verbatim (as it did in the First Amended Complaint) and then specifically alleges that "Claim 11 of the '015 Patent depends from claim 1 and further recites: 'The apparatus of claim 1, further comprising a USB charging port configured to provide charging power from an external power source to said internal power supply.'" (*Id*. at ¶¶ 31, 32.) Noco goes on to set forth allegations tracking several of the elements of claim 1 and further alleges that "each of the Infringing Models have a USB charging port configured to provide charging power from an external power source to the internal power supply."  (*Id*. at ¶¶ 34-39, 40.)  Noco alleges that "Defendants infringe the '015 Patent in violation of 35 U.S.C. § 271 by making, using, selling, offering to sell and/or importing at least the following models of compact lithium jump starters sold under the brand name Smartech that have safety features claimed in claim 11 of the '015 Patent:  GSK-6000, GSK-8000, and GSK 10000."  (*Id*. at ¶ 33.)

Noco then alleges as follows:

> NOCO was also awarded additional patents that relate to flexible and convenient ways to re-charge jump starters using a USB input charging interface. Previously, re-charging a jump starter powerful enough to jump start a 12-volt car battery frequently required a high-power charger through a non-standard or proprietary plug. NOCO engineers devised a new way to recharge using low-voltage inputs through standardized, convenient, and (now) widely-used USB plugs. The additional three asserted patents relating to NOCO's USB charging inventions are United States Patent Nos. 11,447,023 ("the '023 Patent"), 11,584,243 ("the '243 Patent"), and 11,667,203 ("the '203 Patent").

14

(*Id*. at ¶ 41.)  Noco proceeds to set forth numerous factual allegations relating to the '023, '243, and '203 Patents.  (*Id*. at ¶¶ 42- 74.)  The Court will not attempt to summarize all of Noco's proposed factual allegations regarding these new patents but will instead provide a general overview.

The '023 Patent is entitled "Portable Vehicle Battery Jump Start Apparatus With Safety Protection And Jumper Cable Device Thereof."  (*Id*. at ¶ 42.)  The '023 Patent was issued on September 20, 2022 by the USPTO, and a copy is attached to the proposed Second Amended Complaint as Exhibit 5.  (*Id*.)  Noco alleges that "[t]he '023 Patent is generally directed to a handheld jump starter comprising a USB input port and circuit for charging or recharging an internal power supply."  (*Id.* at ¶ 43.)  Noco then recites, verbatim, independent claim 1 of the '023 Patent and alleges that SmarTech's Infringing Models "infringe one or more claims of the '023 Patent."  (*Id*. at ¶ 44, 45.)  The following eight (8) paragraphs then allege specific examples of how the Infringing Models infringe the claims of that Patent.  (*Id*. at ¶¶ 46-53.)

The '243 Patent is entitled "Jump Starting Device With USB."  (*Id*. at ¶ 54.)  The '243 Patent was issued on February 21, 2023 by the USPTO, and a copy is attached to the proposed Second Amended Complaint as Exhibit 6.  (*Id*.)  Noco alleges that "[t]he '243 Patent is generally directed to a jump starting device comprising a USB input connector and circuit for charging or recharging an internal power supply."  (*Id.* at ¶ 55.)  Noco then recites, verbatim, exemplary independent claim 1 of the '243 Patent and alleges that SmarTech's Infringing Models "infringe one or more claims of the '243 Patent."  (*Id*. at ¶¶ 56, 57.)  The following seven (7) paragraphs then allege specific examples of how the Infringing Models infringe the claims of that Patent.  (*Id*. at ¶¶ 58- 64.)

The '203 Patent is entitled "Portable Vehicle Battery Jump Start Apparatus With Safety Protection."  (*Id*. at ¶ 65.)  The '203 Patent was issued on June 6, 2023 by the USPTO, and a copy is

attached to the Proposed Second Amended Complaint as Exhibit 7.  (*Id.*)  Noco alleges that, like the '243 Patent, the '203 Patent "is generally directed to a jump starting device comprising a USB input connector and circuit for charging or recharging an internal power supply."  (*Id.* at ¶ 66.)  Noco then recites, verbatim, exemplary independent claim 1 of the '203 Patent and alleges that SmarTech's Infringing Models "infringe one or more claims of the '293 Patent."  (*Id.* at ¶¶ 67, 68.)  The following six (6) paragraphs then allege specific examples of how the Infringing Models infringe the claims of that Patent.  (*Id.* at ¶¶ 69- 74.)

In Counts Six, Seven, Eight and Nine of the Proposed Second Amended Complaint, respectively, Noco asserts claims for infringement of the '015, '023, '243, and '203 Patents pursuant to 35 U.S.C. § 271.  (*Id.* at ¶¶ 105-128.)

## III.    Standard of Review

### A.    Leave to Amend First Amended Complaint

In its Motion, Noco concedes that it must satisfy both Fed. Rules Civ. Pr. 15 and 16 to obtain leave to amend its First Amended Complaint. [6]  (Doc. No. 63 at pp. 3-4.)  Rule 15 provides that "[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Rule 16 requires the district court to enter a scheduling order that includes a deadline for amending pleadings and provides that a court can modify its scheduling order "only for good cause."

---

[6] The Sixth Circuit has explained that seeking leave to amend a pleading after a scheduling order's deadline has passed implicates both Rule 15 and Rule 16.  *See Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003).  Here, the Court notes that a specific pleading amendment deadline was not set in either the initial Case Management Order (Doc. No. 12) or the post-Markman Scheduling Order issued on May 27, 2020 (Doc. No. 40.)  However, and likely due to how far advanced the instant action progressed prior to the stay, Noco states in its Motion that it must first satisfy the "good cause" standard set forth in Rule 16 to demonstrate that amendment is warranted.  *See* Doc. No. 63 at pp. 3-4.  As Noco concedes that Rule 16 applies, the Court will first determine whether Noco has demonstrated "good cause" under that Rule.  The Court also notes that the "good cause" analysis under Rule 16 dovetails with the "good cause" requirement imposed by Local Patent Rule 3.10(e) for amending Final Infringement Contentions, discussed *infra.*

16

Fed. R. Civ. P. 16(b)(3)(A) & (4). Interpreting the interplay between these two Rules, the Sixth Circuit has held that, notwithstanding Rule 15's directive to freely give leave to amend, a party seeking leave to amend after the scheduling order's deadline must first meet Rule 16's good-cause standard for the district court to amend the scheduling order. *See Leary*, 349 F.3d at 909; *Armatas v. Haws*, 2021 WL 5356028 at * 3 (6th Cir. 2021); *Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 Fed. Appx. 364, 367 (6th Cir. 2016). *See also Satterwhite v. Ashtabula County Metroparks*, 514 F.Supp.3d 1014, 1021 (N.D. Ohio 2021).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp*., 249 F.3d 807, 809 (8th Cir. 2001)). *See also Leary*, 349 F.3d at 907. Possible prejudice to the party opposing modification is another relevant consideration in the good cause analysis. *Inge*, 281 F.3d at 625. *See also Leary*, 349 F.3d at 909; *Carrizo (Utica) LLC*., 661 Fed. Appx. at 368; *Satterwhite*, 514 F.Supp.3d at 1021-1022. "Notably, the moving party must meet a 'higher threshold' in showing good cause under Rule 16 than it would under Rule 15." *Armatas,* 2021 WL 5356028 at * 3 (citing *Shane v. Bunzl Distrib. USA, Inc*., 275 Fed. Appx. 535, 536 (6th Cir. 2008)).

If good cause is shown under Rule 16, the court then considers whether amendment is appropriate under Federal Rule of Civil Procedure 15. As noted above, under Rule 15(a)(2), a district court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory

purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Office of Special Counsel,* 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995)).

### B. Leave to Amend Final Infringement Contentions

Noco also seeks leave to amend its final infringement contentions under Local Patent Rule 3.10(e). As a general matter, Local Patent Rules are intended to "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *John Keeler & Co., Inc. v. Heron Point Seafood, Inc*., 2016 WL 6839615 at * 7 (N.D. Ohio July 8, 2016) (citation omitted). Regarding amendment of final infringement contentions, Local Rule 3.10(e) provides, in relevant part, as follows:

> (e) **A party may amend the final contentions required under L. P. R. 3.9(b)-(d) only by order of the Court upon a showing of good cause and absence of unfair prejudice, made in timely fashion following discovery of the basis for such amendment**. The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions.

United States District Court, N.D. Ohio, Local Patent Rule 3.10(e)(emphasis added). In construing similar local patent rules, the Federal Circuit has held that "good cause" requires a showing of diligence.[7] *See Mortgage Grader, Inc. v. First Choice Loan Services, Inc*., 811 F.3d 1314, 1321 (Fed. Cir. 2016); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1364–65 (Fed. Cir. 2006). The party seeking to amend its contentions bears the burden of proving it acted with diligence. *See id*.

---

[7] As the Federal Circuit has explained: "Since [a district court's Local Patent Rules] are unique to patent cases and have a close relationship to enforcement of substantive patent law, we proceed to review their validity and interpretation under Federal Circuit law." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1364–65 (Fed.Cir.2006). *See also Mortgage Grader, Inc. v. First Choice Loan Services, Inc*., 811 F.3d 1314, 1321 (Fed. Cir. 2016).

IV.    **Analysis**

In its Motion, Noco argues that good cause supports granting leave to amend the First Amended Complaint because it "has not unduly delayed..., but rather has acted diligently within weeks after the Court lifted the stay of this action."  (Doc. No. 63-1 at PageID# 786.)  In this regard, Noco asserts that it could not have moved for leave to amend before the instant action was stayed because the reasons for the proposed amendment did not exist before the stay.  (*Id.*)  Specifically, Noco emphasizes that (1) SmarTech did not introduce its new GSK-series products until sometime after the stay was issued in December 2020; and (2) Noco's new patents (i.e., the '023, '243, and '203 Patents) were not issued until September 2022, February 2023, and June 2023, respectively.  (*Id.* at PageID#s 784-786.)

Noco next argues that it demonstrated diligence by timely alerting the Court and SmarTech of its intention to seek leave to amend "before the Court lifted the stay."  (*Id.* at PageID# 786.)  Noco asserts that its "prompt notice and action confirms that Noco brings this motion in good faith and without dilatory motive."  (*Id*. at PageID# 787.)  Noco then argues that it has not had "repeated failure to cure deficiencies by amendments previously allowed," due (again) to the fact that "this is Noco's first chance to seek leave to amend its pleadings to account for new developments while this action was stayed from 2020 to 2024."  (*Id*.)  Noco also asserts that its proposed Second Amended Complaint is well-pled and not "clearly futile."  (*Id*.)

Noco asserts that SmarTech will not be unduly prejudiced by amendment at this time because "fact discovery was in relatively early stages when this action was stayed in 2020," as "the parties had not conducted any depositions, had only exchanged a few rounds of written discovery, and had not made any expert disclosures."  (*Id*. at PageID#s 787-788.)  Noco maintains that "the three patents

Noco seeks to add in the Second Amended Complaint relate to the same subject matter as the '015 Patent" and, thus, "the proposed claims in the Second Amended Complaint dovetail with the existing claims." (*Id.*)  Noco also emphasizes that SmarTech has not opposed amendment or claimed that it will be unduly prejudiced. (*Id.* at PageID# 787.)

Regarding its request to amend its Final Infringement Contentions, Noco argues that good cause exists to amend to assert "previously unasserted claim 11 of the '015 Patent" against SmarTech's new GSK-series jump starters. (*Id*. at PageID#s 788-789.)  Noco asserts that the SmarTech models at issue in the First Amended Complaint (i.e., the JS-series jump starters) "had conventional DC barrel charging inputs, not USB charging ports" and, thus, were not implicated by claim 11 of the '015 Patent. (*Id*. at PageID# 784.) SmarTech's new GSK-series jump starters, however, include "additional features that were not present in SmarTech's old JS-series jump starters," including the ability to charge the internal battery via a USB Port which does potentially implicate claim 11 of the '015 Patent. (*Id*. at PageID# 789.)  Because SmarTech's new GSK-series jump starters were not released until after the instant case was stayed in December 2020, Noco maintains that good cause supports its request to amend its Final Infringement Contentions. (*Id.*)

Notably, Noco notes that it has "styled" its proposed amended contentions for claim 11 of the '015 Patent as Initial (rather than Final) Contentions because they "are directed to new products for which there has been no discovery." (*Id.*)  Noco then states that all of its proposed patent infringement claims (both with respect to the '015 Patent, as well as the '023, '243, and '203 Patents) will "proceed together under the same schedule," i.e., from scratch, necessitating a new set of deadlines for infringement and non-infringement contentions, invalidity and validity contentions, claims construction briefing, and discovery. (*Id.*)

20

Upon careful consideration, and for the following reasons, the Court finds that Noco has not demonstrated good cause to amend either its First Amended Complaint or its Final Infringement Contentions.

At the outset, it is important to consider the procedural posture of this nearly six year old case. After the initial Complaint was filed in November 2018, both the parties and this Court devoted considerable time and effort associated with the nearly two years of patent litigation that occurred prior to the imposition of the stay in December 2020. As discussed *supra*, prior to the stay, the parties exchanged initial infringement and non-infringement contentions, invalidity and validity contentions, claims construction briefing, and final infringement contentions relative to the '015 Patent. Moreover (and contrary to Noco's statement that fact discovery "was in its early stages"), the docket reflects that the parties were just three days shy of the fact discovery deadline when the Court granted SmarTech's unopposed Motion Stay, and stayed the case on December 8, 2020. In terms of judicial resources, the docket reflects that this Court conducted two case management conferences, numerous status conferences, and issued a lengthy Markman opinion construing several claims of the '015 Patent prior to the stay. All the while, Noco's five trademark and unfair competition claims (and SmarTech's five trademark and unfair competition counterclaims) took a back seat, resulting in years of delay in advancing and resolving those claims.

At the parties' urging, the Court nonetheless stayed the case pending IPR review. In so doing, the Court relied on the repeated representations of counsel that "the IPR decision, whatever the outcome, will simplify the issues and trial in this case" and that a stay would "save the Court and the parties significant expenses." (Doc. No. 48.) And, indeed, the Court naturally thought that would be the case when it learned that the IPR review and subsequent Federal Circuit decision resulted in the

21

invalidation of **all** of the '015 Patent claims asserted by Noco in this action.[8]  It was only after repeated prodding by this Court for more information that Noco finally advised this Court that, rather than simplifying this case, the IPR review and Federal Circuit decision had prompted Noco to now seek leave to dramatically change and expand the scope of the instant action.

Recall, because of Noco's voluntary dismissal of its patent infringement claims relating to the '015 Patent, there are currently no patent infringement claims pending in this case.[9]  Now, however, Noco seeks to assert numerous new patent infringement claims based on three entirely new patents (as well as the previously unasserted claim 11 of the '015 Patent) against three entirely new SmarTech products.  What Noco proposes is not an amendment – it is essentially an entirely new lawsuit.  Indeed, if the Court granted Noco's Motion, the parties and the Court would have to start this case all over again, with entirely new rounds of initial infringement and non-infringement contentions, invalidity and validity contentions, claims construction briefing, and a new Markman decision by this Court.  Fact discovery would also have to start anew, as there has been no fact discovery regarding SmarTech's GSK series jump starters.  This would inevitably further delay the resolution of the many trademark and unfair competition claims and counterclaims in this action.

---

[8] While claim 11 of the '015 Patent survived IPR review, Noco concedes that it did not assert claim 11 against SmarTech's JS series jump starters in either the First Amended Complaint or its Initial or Final Infringement contentions.

[9] The Court notes that, in its Stipulation of Voluntary Partial Dismissal, Noco stated that it "still asserts claim 11 of the '105 Patent against Defendants, as indicated in its Motion for Leave to Amend." (Doc. No. 64.) The Court included language to effect in its Order dated May 1, 2024.  (Doc. No. 65.)  However, upon careful review, it is clear that Noco does not, in fact, assert claim 11 against SmarTech's Infringing Products in the First Amended Complaint.  Specifically, in the First Amended Complaint and, later, its Initial and Final Infringement Contentions, Noco alleged that certain of SmarTech's JS-series jump starters infringed claims 1-3, 8-10, 12, 13, 15, 17, and 19 of the '015 Patent.  Noco expressly concedes that SmarTech's JS-series jump starters did not implicate claim 11 of the '015 Patent because the JS-series starters did not have USB charging ports. Thus, once this Court entered the dismissal of Noco's pending patent claims against SmarTech's JS-series jump starters on May 1, 2024, there were effectively no patent claims left in the instant action.

In other words, allowing amendment at this time would complicate and prolong this already six-year-old case. This is the precise opposite of the purported purpose and intent of staying this action pending IPR and Federal Circuit review, and entirely inconsistent with the parties' representations that "the IPR decision, whatever the outcome, will simplify the issues and trial in this case." (Doc. No. 48.) Faced with similar circumstances, courts have refused to allow amendment. *See, e.g., IXI Mobile (R&D) Ltd v. Samsung Electronics Co., Ltd*, 2019 WL 5102570 (N.D. Cal. Oct. 11, 2019) (after lifting stay pending IPR review, district court denied leave to amend infringement contentions where plaintiff sought to "re-expand the scope of the case, dramatically, by asserting what could be more than a hundred new claims"); *Wave Loch, Inc. v. American Wave Machines, Inc*. 2014 WL 7261552 (S.D. Cal. Oct. 1, 2014) (after lifting stay pending USPTO reexamination proceedings, district court denied leave to amend complaint and infringement contentions where plaintiff sought to assert fifty one new patent claims).

With the above in mind, the Court finds that Noco has failed to demonstrate good cause under Rule 16 for amending its First Amended Complaint. Noco has failed to demonstrate that it acted diligently in pursuing its proposed new patent claims against SmarTech's GSK-series jump starters. The Court recognizes that the '023, '243, and '203 Patents were not issued until September 2022, February 2023, and June 2023, respectively, and that SmarTech did not introduce its new GSK-series products until sometime after the stay was imposed in December 2020. However, Noco offers no explanation why it could not (by no later than mid-2023, when the last of the three new patents was issued) have either sought leave to lift the stay in the instant action to pursue its new patent claims against SmarTech's GSK series jump starters, or filed a separate action in federal court to pursue

these claims.[10]  Instead, Noco waited more than eight months (until May 2024) to file its Motion for Leave to Amend.  This is a significant delay, for which Noco provides no meaningful explanation.

The Court also takes issue with Noco's assertion that it "timely alerted" this Court of its intention to seek leave "before the Court lifted the stay."  (Doc. No. 63-1 at PageID# 786.)  The Court finds this to be a disingenuous characterization of the record.  The docket, in fact, reflects the following.  On April 15, 2022, the Court ordered the parties to file a Status Report within ten days of the Federal Circuit Court decision.  *See* Non-Doc Order dated April 15, 2022.  Although the Federal Circuit issued its decision on February 12, 2024 (making the Status Report due February 22, 2024), Noco did not file a Status Report notifying the Court of the decision until March 14, 2024.  (Doc. No. 59.)  In that Status Report, Noco said nothing about its intention to seek leave to dramatically change and expand the patent claims in this action.  (*Id*.)  Indeed, Noco said virtually nothing at all, other than that "the Federal Circuit issued an order under Fed. Cir. R. 36 affirming the Board's findings in *Inter Partes* Review No. 2020-00944 with respect to the '015 Patent."  (*Id*.)  That same day, the Court ordered the parties to file Status Reports on the docket "addressing the impact of the Federal Circuit decision on the instant litigation." *See* Non-Doc. Order dated March 14, 2024.

Noco filed its Status Report on March 21, 2024.  (Doc. No. 60.)  In its entirety, Noco's Status Report states as follows:

> Pursuant to this Court's March 14, 2024 Text Order "to file Status Reports on the docket addressing the impact of the Federal Circuit decision on the instant litigation," Plaintiff The NOCO Company ("Plaintiff"), by and through its undersigned counsel, submits this status report concerning the *Inter Partes* Review of U.S. Patent No.

---

[10] Noco does not identify *when* SmarTech released its GSK series jump starters, stating only that SmarTech released the GSK-series jump starters sometime after the instant action was stayed in December 2020.  As noted *supra,* Noco bears the burden of demonstrating diligence.  By failing to identify the release date(s) of SmarTech's GSK-series jump starters, or otherwise argue that Noco could not have previously asserted its new patent claims because the GSK series jump starters at issue were only recently released, Noco fails to carry its burden of demonstrating diligence.

9,007,015 ("the '015 Patent")—the asserted patent in this action—and subsequent Federal Circuit appeals.

In *Inter Partes* Review No. 2020-00944, the Patent Trial and Appeal Board found claim 11 of the '015 Patent was not proven unpatentable, but found claims 1-10 and 12-23 unpatentable.  Both NOCO and the petitioner appealed the Board's findings. On February 12, 2024, the Federal Circuit issued a Fed. Cir. R. 36 order affirming the Board's decision. Thus, while claims 1-10 and 12-23 of the '015 Patent have been found unpatentable, claim 11 of the '015 Patent survived the petitioner's IPR challenge and subsequent appeal. **NOCO therefore intends to seek a voluntary dismissal of its patent infringement claims in the present action.** NOCO's remaining claims are not affected.

(*Id.*) (emphasis added).  Once again, Noco did not advise the Court of its intent to seek leave to assert numerous new patent infringement claims based on three entirely new patents (as well as the previously unasserted claim 11 of the '015 Patent) against three entirely new SmarTech products. Nor did Noco even hint that such a request for amendment was contemplated.

The Court ordered Noco to file a Motion to Reopen the instant case by no later than April 12, 2024, and ordered the parties to file a Joint Status Report "identifying their remaining claims/counterclaims in the instant action" and the status of discovery with respect thereto.  *See* Non-Doc. Order dated March 22, 2024.  On April 12, 2024, Noco for the first time advised this Court (and counsel for SmarTech) of its intent to seek leave to amend its First Amended Complaint and Final Infringement Contentions to assert new patent infringement claims relating to its USB charging port technology.  (Doc. No. 62.)  The Court then ordered Noco to file its Motion for Leave to Amend by no later than May 1, 2024.  Noco filed its Motion on that date.  (Doc. No. 63.)

Thus, the docket reflects that Noco delayed advising this Court of the issuance of the Federal Circuit decision and then further delayed advising either this Court or counsel for SmarTech of its intent to seek leave to drastically change and expand its patent infringement claims.  The Court does not consider this to demonstrate diligence, particularly considering the fact (as discussed above) that

25

Noco has clearly been aware of the '023, '203, and '243 patents (and the GSK-series jump starters) for some time.

Noco asserts that leave to amend should be granted because SmarTech did not oppose Noco's Motion and SmarTech will not be unduly prejudiced by amendment. (Doc. No. 63-1 at PageID# 787-788.)  The Court rejects this argument.  As noted above, the "primary measure" of Rule 16's good cause standard is the moving party's diligence.  *Inge,* 281 F.3d at 625.  "While a consideration of potential prejudice to the nonmovant is a factor the court should consider [under Rule 16], even in the absence of prejudice the plaintiff must explain its failure to assert the amendment in a timely fashion."  *Coleman v. De Puy Synthes Sales, Inc.*, 2018 WL 3589108 at * 1-2 (M.D. Tenn. March 22, 2018) (citing *Stewart v. King*, 2011 WL 237678 at *5 (M.D. Tenn. Jan. 24, 2011).  *See also Korn v. Paul Revere Life Ins. Co.*, 382 Fed. Appx 443, 450 (6th Cir. 2010) ("Even if the Court were to agree that an amendment would not have prejudiced Paul Revere, prejudice to Paul Revere is merely a consideration that informs whether Korn has satisfied the 'good cause' requirement of the *Leary* standard [under Rule 16].  To satisfy the *Leary* standard, Korn must also explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order.")

"Where the plaintiff's explanation for the delay is simply insufficient or not credible, it is appropriate for the court to deny the motion for leave to amend."  *Stewart*, 2011 WL 237678 at * 5.  Moreover, when a party seeks to amend in the late stages of a case, the moving party bears "an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd*., 259 F.3d 452, 459 (6th Cir. 2001).  *See also Tenpenny v. Prime Now, LLC*, 2020 WL 2062121 at * 2-3 (M.D. Tenn. April 29, 2020), *aff'd by* 2020 WL 12894953 at (M.D. Tenn. July 16, 2020).

Here, the Court finds that Noco has failed to sufficiently explain its failure to timely pursue its new patent claims against SmarTech's new products for all the reasons set forth above. Additionally, because Noco seeks to amend to add new patent claims against new products late in the patent stages of the instant action (i.e., after the parties exchanged initial infringement and non-infringement contentions, invalidity and validity contentions, and claims construction briefing; after the Court issued its Markman Order; and at the very end of the fact discovery period), Noco has an increased burden to show justification for failing to pursue its new patent claims earlier. Noco has failed to satisfy this burden. Thus, denial of Noco's Motion to Amend is appropriate, even where SmarTech (inexplicably) failed to oppose the Motion or otherwise argue that it would be prejudiced by amendment at this time.

Further, as the Sixth Circuit has held (while evaluating a motion to amend under the more liberal standard of Rule 15(a)) "[a]t some point… delay will become undue, placing an unwanted burden on the court…." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). *See also Commerce Benefits Group, Inc. v. McKesson Corp.*, 326 Fed. Appx. 369, 377-378 (6th Cir. 2009) (affirming district court decision to deny request for extension of discovery deadline under Rule 16's good cause standard where "any further delay in discovery would have resulted in additional time and expense incurred by both the parties *and the court*"); *Simmons v. Henry Ford Health Systems*, 2020 WL 9549904 at * 2 (E.D. Mich. Jan. 8, 2020) (in evaluating good cause under Rule 16, "the burden on the Court" is another "important consideration[].") Such is the case here. This Court has already expended considerable judicial resources setting and overseeing the previous set of patent case management deadlines, reviewing and analyzing the parties' Claims Construction Briefs (Doc. Nos. 31, 32, 34, 35), and issuing a lengthy Markman Order (Doc. No. 37). To essentially start this process

all over again, from scratch, regarding three new patents and three new allegedly infringing products would result in substantial delay and an unwarranted burden on this Court.

Accordingly, and for all the reasons set forth above, the Court finds that Noco has failed to demonstrate good cause under Rule 16 for waiting until May 2024 to seek leave to amend its First Amended Complaint to add its proposed new patent infringement claims. [11]  For the same reasons, the Court likewise finds that Noco has failed to demonstrate good cause to amend its Final Infringement Contentions under Local Patent Rule 3.10(e).  The Court, therefore, denies Noco's Motion for Leave to Amend (Doc. No. 63).

## V.    Conclusion

For the reasons set forth above, Plaintiff The Noco Company, Inc.'s Motion for Leave to Amend the Complaint and Final Infringement Contentions (Doc. No. 63) is DENIED.

**IT IS SO ORDERED**

  _s/Pamela A. Barker_
  PAMELA A. BARKER
Date:  October 7, 2024        U. S. DISTRICT JUDGE

---

[11] Noco argues (summarily) that leave to amend should be granted because "the three patents Noco seeks to add in the Second Amended Complaint relate to the same subject matter of the '015 Patent" and, therefore, the "proposed claims of the Second Amended Complaint dovetail with the existing claims."  (Doc. No. 63-1 at PageID# 788.)  This argument is without merit. As the Court noted *supra*, there are currently no patent infringement claims in this action, as Noco voluntarily dismissed all of its previously asserted patent claims under the '015 Patent and Noco itself concedes that SmarTech's JS series jump starters do not implicate claim 11 of that Patent.  Thus, the three new patents do not "dovetail" with any existing patent claims in this action. The Court also notes, in passing, that Noco's proposed new patent infringement claims do not relate to the subject of Noco's trademark and unfair competition claims, which are directed towards SmarTech's IC-750 smarter battery maintainer product.